UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN STEVEN GARDNER | ) | |
| Petitioner | ) | |
| | ) | 1:10-CV-610 |
| v. | ) | |
| | ) | |
| RICK THALER, Director | ) | |
| Texas Department of Criminal Justice, | ) | (Death Penalty Case) |
| Correctional Institutions Division, | ) | |
| Respondent | ) | |

**REPLY
TO RESPONDENT'S ANSWER
TO
PETITION FOR WRIT OF HABEAS CORPUS**

_____

**DEATH-PENALTY CASE**

Lydia M.V. Brandt
Texas Bar No. 00795262
lydiamb@airmail.net
THE BRANDT LAW FIRM, P.C.
P.O. Box 850843
Richardson, Texas   75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR GARDNER

# TABLE OF CONTENTS

ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Preliminary Legal Issues Relevant to All Claims for Relief. . . . . . . . . . . . . . . . . . 1

    A.  Gardner was deprived of a constitutionally adequate opportunity to be heard in an evidentiary hearing addressing materially disputed issues of fact; the state court decision is not entitled to AEDPA deference. . . . . . . . . . . . . . 1

    B.  *Strickland* does not measure constitutionally deficient performance based on the "forthrightness" or "credibility" of the trial lawyer. . . . . . . . . . . . . . . 3

    C.  A legal determination of ineffectiveness, places at risk an attorney's reputation, as well as his livelihood derived from capital and non-capital cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.  The issue of the juror affidavits is a federal, not state, law issue. . . . . . . . 4

GROUNDS ONE, TWO, THREE, FOUR  –  THE MITIGATION INVESTIGATION WAS NOT ADEQUATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  1st faulty premise: The mitigation investigation was "thorough." An adequate work-product does not arise merely because "numerous investigators and experts" were hired. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  2nd faulty premise: The mitigation evidence was "unfavorable," and thus, was properly excluded.  This evidence had mitigating significance beyond the scope of the special issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  3rd faulty premise: Counsel retained experts and "provid[ed] them with the relevant background material."  This is not supported by the record. . . . . 8

    D.  4th  faulty premise:  The state habeas  mitigation investigation revealed only "poor things to say about Gardner."  This data is the *sine qua non* of the mitigation in this case, and from which unifying themes and patterns of behavior (in this case attachment disorder) are identified. . . . . . . . . . . . . . 9

    E.  5th faulty premise: Gardner failed to cite to operative ABA Guidelines. Gardner cited to ABA GUIDELINE 10.7 which reflects that the mitigation investigation is interrelated to the first phase of trial. . . . . . . . . . . . . . . . . 11

    F.  In quoting *Strickland*, Respondent omits the crux of *Strickland's* holding: "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation". . . . . . . . . . . . . . . . . . . . . . . . . . 11

    G.  In the case at bar, the strategic choice of counsel was not reasonable. . . . 13

        1.  Not only was the mitigation investigation itself inadequate; the themes and patterns of behavior had not been identified and developed by the mitigation investigator. . . . . . . . . . . . . . . . . . . . . 13

        2.  The TCCA ruled that the trial attorneys knew the mitigation investigation and development was inadequate. . . . . . . . . . . . . . . . 14

        3.  Trial counsel was constitutionally ineffective because the limitations on the mitigation investigation were not supported by reasonable professional judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4.      The trial attorneys, not the mental health experts, are responsible for the theory of the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        Federal Habeas Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                Exhibit 5: 2003 ABA Guideline 10.7 at 1015. . . . . . . . . . . . . . . . . . . . 19

## ARGUMENTS AND AUTHORITIES

### I.       Preliminary Legal Issues Relevant to All Claims for Relief.

####      A.       Gardner was deprived of a constitutionally adequate opportunity to be heard in an evidentiary hearing addressing materially disputed issues of fact; the state court decision is not entitled to AEDPA deference

The Respondent contends that Gardner "distorts the holdings in *Panetti* and similar cases" because "[a]ccording to Gardner, in order for a hearing to be 'full and fair' there must be a live hearing with discovery."  Answer at 18-19 n.6; at 50 n.22; at 90 n.45.

Habeas is a legal proceeding, in which findings and conclusions are to be premised on fact. The speculative nature, conjecture, conclusory attestations, and unfounded assumptions on which the Answer, and the Fact Findings are premised, support the need for an evidentiary hearing, and eliminate AEDPA deference.  Further, there are material issues of fact in dispute that require a hearing.  For example:

- There is no contested issue that the trial mitigation investigator, Shelli Schade, "refused to share notes from her mitigation investigation and refused to summarize her findings in a report to the attorneys," Pet. Exhibit 4:  Jt. Affidavit of trial counsel, p. 7.  There is a contested fact issue that the mitigation investigation was adequate.  Respondent's speculation bring the controversy into even sharper focus when he argues that "*presumably* through oral reports," Shade provided the results of her investigation to counsel.  Ans. at 65.  In its September 15, 2010 order, the Texas Court of Criminal Appeals, explicitly *refused to adopt* FF No. 67 that defense counsel "did not believe that their investigation was impaired...."[1]  Thus, there is no factual support for the Respondent's "presumption" of oral communications.

- The Answer also contains an assertion that "[trial] counsel consulted with John Niland, ... an attorney with the Texas Defender Service, and a local attorney, Bill Schultz, regarding their mitigation strategy and 'both concluded that our decision

---

[1]      FF No. 67 recited that **defense counsel "did not believe that their investigation was impaired**," because "their mitigation expert, Shelli Schade, was 'overly close' with Applicant and his family." (Emphasis supplied)

was a sound trial strategy.'" Ans. at 65. The joint affidavit of trial counsel (on which the Findings and Conclusions are premised) is purely conclusory. The record is silent about what data Niland and Schultz had been provided. Accordingly, there is a dearth of facts to support the reliability, validity or accuracy of the conclusion of "sound trial strategy."

• The Answer also contains the assertion that "***the state habeas court noted** that* ***neither*** *Dr. Kessner nor Gardner's state habeas mitigation specialist, Toni Knox,* ***believed*** *that abandonment rage theory was applicable to the guilt-innocence phase*, 2 SHCR 388 (Findings 30 & 31) ...." (Emphasis supplied). Ans. at 42. There is no such "notation" by the state habeas court in the FFCL. Nothing in the affidavits of Dr. Kessner and Toni Knox support the assertion of this "belief."

The *Panetti* Court does not ask if the trial and habeas judge were the same.[2] *Panetti* asks if a petitioner was "deprived of a constitutionally adequate opportunity to be heard." Gardner was "deprived of a constitutionally adequate opportunity to be heard" in state habeas, Pet. at 21. Gardner had made a *prima facie* showing with respect to each of his claims, yet the state court deprived him of the opportunity to develop them and instead premised its denial of habeas relief on conjecture, speculation, and conclusory attestations. "[The] state court failed to provide him with an opportunity to develop his claim, [which in turn] deprives the state court decision of the deference ordinarily due under the AEDPA." *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010), *citing Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007).

In addition, and as Mr. Gardner argued in his petition, Justice Breyer's concurrence in *Pinholster* is instructive:

if the state-court rejection assumed the habeas petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a(d) ground) an (e) hearing might be needed to determine whether the facts alleged were indeed true.

---

[2]    *See* Ans. at 22 *citing Murphy*, 205 F.3d at 816 for the proposition that a paper hearing is sufficient "where ... the trial court and the state habeas court are one and the same."

---

*Cullen v. Pinholster*, 131 S.Ct. 1388, 1412 (2011).  *See* Pet. at p. 25.

**B.     *Strickland* does not measure constitutionally deficient performance based on the "forthrightness" or "credibility" of the trial lawyer**

The Answer mistakenly characterizes Gardner's position as "tak[ing] issue with the fact that the credibility choice did not go in his favor." Ans. at 24.  The issue is not about credibility.  The issue to be determined under *Strickland* and its progeny ask two questions: was counsel's performance deficient, and if so, was there prejudice.  Yet the FFCL, instead, veer far afield of *Strickland*, with superfluous characterizations of the trial attorneys as "forthright and credible"  – labels that are irrelevant to the elements of *Strickland*.

**C.     A legal determination of ineffectiveness, places at risk an attorney's reputation, as well as his livelihood derived from capital and non-capital cases**

Respondent argues that "an attorney's admission of deficiency is not a legal finding of ineffectiveness.  An attorney's belief that they erred is a subjective determination." Ans. at 25.  What appears to be overlook is that such an attestation is an admission-against-interest when it details the facts of performance on which a court will make the legal deficiency/prejudice determination.

Moreover, it is irrelevant whether the removal from appointments list is permanent or not pursuant to TEX. CODE CRIM. PROC. Art. 26.052.  Ans. 26.   This is because a legal determination that an attorney was ineffective, is a matter of public record.  The notoriety engendered by such a determination adversely affects, not only an attorney's livelihood, but also his reputation both in the public and in the legal community.   It could adversely impact the attorney's book-of-business as to both capital and non-capital cases alike because referrals are premised on reputation.  Hence,

TEX. CODE CRIM. PROC. Art. 26.052 does create a conflict of interest even when the effectiveness determination is made after trial counsel is replaced by other counsel in subsequent proceedings.

### D.    The issue of the juror affidavits is a federal, not state, law issue

Respondent argues that the "state court interpreted state law in striking the juror affidavits, ... and this Court may not disturb that finding because "it is not the province of a federal court to reexamine state-court determinations on state-law questions."  Ans. at 29; 59 n.28.    This is mistaken.

The juror affidavits are not issues of state law.  What is at issue is Gardner's federal constitutional right to effective assistance of trial counsel.  The juror affidavits rebutted that "counsel's reasons for not pursuing such a defense were reasonable," and rebutted that a Collin County jury would have been distrustful of such a defense theory.  FF No. 53.  They also put material issues of fact in dispute.

The juror affidavits reflect that the state court findings are not entitled to a presumption of correctness because the findings are "'objectively unreasonable in the light of the evidence presented in the state-court proceeding,'" *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005), *citing Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(d)(2).  "[N]oncompliance with *federal* law ... renders a State's criminal judgment susceptible to collateral attack in the federal courts."  *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).

GROUNDS ONE, TWO, THREE, FOUR – THE MITIGATION INVESTIGATION WAS NOT ADEQUATE

Grounds 1, through and including 4, place material facts at issue concerning whether the mitigation investigation was adequate; and whether trial counsel's choices made after less than a complete investigation was reasonable.  Accordingly the mitigation investigation will be addressed below, and is incorporated by reference into the reply for each of the four grounds.

A.     1st faulty premise: The mitigation investigation was "thorough."  An adequate work-product does not arise merely because "numerous investigators and experts" were hired

The contention in the Answer is that "counsel employed numerous investigators and experts in accord with then-prevailing guidelines." Ans. at 75.  *See also* Ans. at p. 68, n. 35.  From this fact, arises the mistaken assertion that the mitigation investigation was "thorough," Ans. at 72, and thereafter, the mistaken conclusion that "undoubtedly, counsel made a reasonable investigation into Gardner's background which, in turn, makes the state habeas court's denial of relief on this point reasonable."  Ans. at 74.

The mere fact that professionals are hired does not give rise to the "fact" or justify a "legal conclusion" that the work product of the professional was thorough and adequate.  Indeed, the caselaw on ineffective assistance of counsel cuts against the foundation on which Respondent's argument is premised.  For example in *Wiggins v. Smith*, 539 U.S. 510 (2003), the state court had appointed legal professionals.  Yet, the Supreme Court held that the performance of defense counsel fell short of prevailing professional standards, and that the deficient performance was prejudicial.

**B.**     **2nd faulty premise: The mitigation evidence was "unfavorable," and thus, was properly excluded.  This evidence had mitigating significance beyond the scope of the special issues**

Relying on state court FFCL, the Respondent repeatedly characterizes certain evidence as

_exclusively_ aggravating in character, to support the conclusion that the omission of this evidence at

trial was reasonable:

- "the state habeas court also noted that counsel discovered a host of evidence ***not favorable*** to Gardner, ... "  Ans. at 68, FFCL 68, 69, 70, 72;

- the state habeas evidence that "would have brought attention to the fact that Gardner '***was consistently violent and incapable of ever forming normal, non-violent relationships***,'"  Ans. at 70, FFCL Nos 80, 81, 82;

- the abandonment "rage" as a theory that could not be raised, because it is ***an aggravating factor***.  Ans. at 70, and

- the state habeas affidavits of Sylvia, Donald and Randy Reeves "did ***not*** provide credible, ***helpful*** testimony." Ans. at 69.

This line of argumentation in both the FFCL and the Answer, stands on the proposition that

only _Skipper_ evidence (good person evidence) is to be admitted.[3]  The FFCL, as well as

Respondent's argument, are contrary to and an unreasonable application of U.S. Supreme Court

precedent.

Like _Abdul-Kabir_, Mr. Gardner's _Strickland_ claim about "particularized childhood

experiences of abuse and neglect [are events] ...   which presumably most jurors have never

---

[3]     The defense-sponsored testimony that Gardner "had Christ in his heart," and "was a good worker," is _Skipper_ evidence, which is also known as "good person" evidence.  _Skipper_ evidence, implicates the 8th amendment principles of _Lockett_ and _Eddings_.  _Compare Skipper v. South Carolina_, 476 U.S. 1, 3, 4 (1986)  ("Petitioner also sought to introduce testimony of two jailers and one "regular visitor" to the jail to the effect that petitioner had "made a good adjustment" during his time spent in jail. ...  We granted certiorari to consider petitioner's claim that the South Carolina Supreme Court's decision is inconsistent with this Court's decisions in _Lockett_ and _Eddings,_ and we now reverse.").

experienced and which affect each individual in a distinct manner." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 261 (2007).

When the FFCL determine that it was reasonable to exclude "unfavorable" evidence, such determinations are contrary to and an unreasonable application of Supreme Court precedent because the U.S. Supreme Court has held that such evidence has mitigating effect that goes beyond the scope of the special issues. *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 256 (2007) (in which "the testimony of Cole's mother and aunt, as well as the portions of the expert testimony suggesting that his dangerous character may have been the result of his rough childhood and possible neurological damage," must be "permitted its mitigating force beyond the scope of the special issues.").

In second phase (punishment), the "unfavorable" evidence explains why a defendant is less morally culpable and not deserving of death in the punishment phase. *Abdul-Kabir*, 550 U.S. at 256 ("Cole's evidence of childhood deprivation and lack of self-control did not rebut either deliberateness or future dangerousness but was intended to provide the jury with an entirely different reason for not imposing a death sentence.").

Moreover, the "unfavorable" evidence in the case-at-bar is the doorway to first phase defenses as well. On closer scrutiny, it can give rise to a possible first-phase defense that the impairment may diminish blameworthiness for the crime in the guilt/innocence phase.[4] As Dutton explains it, early childhood trauma stemming from abandonment compromises the orbitofrontal

---

[4]   *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008) ("[B]oth physical and mental diseases or defects may affect a person's perception of the world just as much as they may affect his rational understanding of his conduct or his capacity to make moral judgments. .... Courts routinely admit evidence of a physical abnormality offered to prove a lack of *mens rea*. In Texas, the same rule applies to evidence of a mental disease or defect offered to rebut or disprove the defendant's culpable mens *rea*.").

cortex which is implicated in control of aggressive impulses.   *See* Pet. at 70, n.16  –  DONALD G.
DUTTON. (2002). *The Neurobiology of Abandonment Homicide*, *Aggression and Violent Behavior,
7,* 407-421.  Thus, it would have negated the prosecutor's theory that the killing was an intentional
act done in retaliation for testifying.


C.      **3ʳᵈ faulty premise: Counsel retained experts and "provid[ed] them with the
        relevant background material."  This is not supported by the record**

The record does not support another faulty premise in the Answer, to wit:

counsel is not deficient when after retaining pertinent experts and ***providing them
with the relevant background material***, ...."

Ans. at 39.   The experts were not provided with relevant background material.

There is no contested issue that the trial mitigation investigator, Shelli Schade,  "refused to
share notes from her mitigation investigation and refused to summarize her findings in a report t the
attorneys," Pet. Exhibit 4:  Jt. Affidavit of trial counsel, p. 7.  There is a contested issue that arises
from Respondent's speculation that the mitigation investigation was adequate because "*presumably*
through oral reports," Shade provided the results of her investigation to counsel. Ans. at 65.  Indeed,
in its September 15, 2010 order, the Texas Court of Criminal Appeals, explicitly *refused to adopt*
FF No. 67 that defense counsel "did not believe that their investigation was impaired...."[5] hus, there
is no factual support for the Respondent's "presumption" of oral communications.

---

[5]    FF No. 67 recited that ***defense counsel "did not believe that their investigation was
impaired***," because "their mitigation expert, Shelli Schade, was 'overly close' with Applicant
and his family." (Emphasis supplied)

**D.**     **4ᵗʰ faulty premise:  The state habeas  mitigation investigation revealed only "poor things to say about Gardner."  This data is the *sine qua non* of the mitigation in this case, and from which unifying themes and patterns of behavior (in this case attachment disorder) are identified**

The Answer is dismissive of the state habeas mitigation investigation asserting "the only additional evidence produced during the state habeas proceeding comes from Gardner's former brother-, sister-, and nephew-in-law, a former military acquaintance, and former church members, all of whom, except the church member, ***have poor things to say about Gardner***."  (Emphasis supplied)  Ans. at 55, n. 26.  Both the state courts and the Respondent fail to grasp the mitigating significance beyond the special issues of what was found.

Assuming for the sake of argument that "[trial] counsel [had] discovered a host of evidence not favorable to Gardner,"Ans. at 68, the trial mitigation investigation remains deficient.[6]  A mitigation investigator is not just a data collector, but a specialist who identifies for the defense team the documented trends, patterns of behavior, and mitigation themes that the evidence reveals.  *See* Exhibit D: Affidavit of Knox, LCSW at pp. 4-5.  In the case at bar, the mitigation investigator failed to identify unifying themes, spots trends, and recognize patterns of behavior. A salient theme that permeates this evidence is that of attachment disorder, a pervasive pattern of behavior "seen in all of Steve Gardner's relationships ...", which had its genesis in Gardener's early childhood history. State Hab. Appln, Exhibit C: Affidavit of Kessner, Psy.D., pp. 8, 10, paras. 21, 25.

---

[6]     *See*  David C. Stebbins & Scott P. Kenney, *Zen and the Art of Mitigation Presentation, or, The Use of Psycho-Social Experts in the Penalty Phase of a Capital Trial*, The Champion, Aug. 1986, at pp. 16–17 ("Upon appointment to a capital case, two concurrent investigations should be begun by separate and distinct investigatory personnel....  A social history is a complete chronicle of every event of any significance in the life of the client from birth, or even before, to the present.... Without a complete social history, any psychological examination is incomplete and the resulting opinions, conclusions, or diagnoses are subject to severe scrutiny.");

In point of fact, there was a singular absence of any "unifying theme that explained why Steve was less morally culpable and not deserving of death."  Exhibit D: Affidavit of Toni Knox, LCSW at p. 11.  Because the trial mitigation investigation failed to identify salient themes and patterns of behaviors, defense counsel could not have developed *any* an effective theory of the case whatsoever  –   contrary to FF Nos. 44-52.  Trial counsel lacked the necessary information to challenge the essential elements[7] of capital murder in guilt/innocence,  or to explain to the jury why Steve Gardner was not worthy of death in the punishment phase.

Likewise, the many self-serving "explanations"[8] against running an abandonment rage theory in the joint affidavit of defense counsel, fail for the same reason.  Without an adequate mitigation investigation at the outset, the strategic choices were neither reasonable nor were the strategic choices "virtually unchallengeable."  This is because they were not "strategic choices made after thorough investigation of law and facts relevant to plausible options."  *Strickland*, 466 U.S. at 690.  For the same reason, this is not  – as Respondent contends  – a "simple disagreement with counsel's strategy."  Ans. at 54, n. 25.  There could be no reasonable trial strategy, because the mitigation investigation and development was woefully inadequate and incomplete.

----

[7]   Attachment disorder, which in the context of spousal killings is known in the research literature as abandonment rage, has adverse neurobiological effects.  It would have negated the prosecutor's theory that of an intentional killing in retaliation for testifying.  As Dutton explains it, early childhood trauma stemming from abandonment compromises the orbitofrontal cortex which is implicated in control of aggressive impulses.  *See* Pet. at 70, n.16  –  DONALD G. DUTTON. (2002). *The Neurobiology of Abandonment  Homicide*, *Aggression and Violent Behavior, 7,* 407-421.

[8]   (*e.g.,* the mitigation specialist "discovered little or nothing deemed useful," Ans. at 51; "counsel can not present what does not exist," Ans. at 57, "opening the door to bad acts," Ans. at 40; theory as a "novel defensive theory,"Ans. at 40,  "legally inapplicable defense," and "not a good fit, factually, for Gardner," Ans. at 42, etc.)

----

**E.**    **5th faulty premise: Gardner failed to cite to operative ABA Guidelines.  Gardner cited to ABA GUIDELINE 10.7 which reflects that the mitigation investigation is interrelated to the first phase of trial**

Respondent asserts in a footnote that "the American Bar Association guideline that Gardner relies upon to support the interrelatedness between a mitigation investigation and preparation for the guilt-innocence phase, Pet. 35-36, was adopted well after Gardner's trial and, therefore, cannot support the deficiency prong of *Strickland*."  Ans. at 38 n.16. See also Ans. at 68, n.36; at 52 n.24. While the Supplemental ABA Guides 10.4 and 10.11 (2008) referred to in the petition provide further elaboration, they do not change the applicability of ABA GUIDELINE 10.7 – INVESTIGATION (rev. ed. Feb. 2003)

Gardner cited to and relied on ABA GUIDELINE 10.7 – INVESTIGATION (rev. ed. Feb. 2003) which was in effect at the time of the trial.    Pet. at 38, 63, 102.  This guideline addresses the interrelatedness between the mitigation investigation and the first phase.  It instructs that "***the mitigation investigation should begin as quickly as possible, because it may affect the investigation of the first phase*** defenses, ... decisions about the need for expert evaluations ... [pertaining to mental health, from which theories for challenging *mens rea* and death penalty eligibility arise], motion practice, and plea negotiations."    Exhibit 5: 2003 ABA Guideline 10.7 at 1015, 1021.

**F.**    **In quoting *Strickland*, Respondent omits the crux of *Strickland's* holding: "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"**

Respondent cites to *Strickland* for the proposition that "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable."  Ans.

at 40, 71.  The premise is faulty because the mitigation was certainly not "thorough;" indeed,  it did not even rise to being merely adequate.

The applicable portion of the holding of *Strickland* to the case at bar is the sentence that follows what Respondent had quoted:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and ***strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation***.

(Emphasis supplied)  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  *See also Williams v. Taylor*, 529 U.S. 362, 396 (1999) (Supreme Court concluded that counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision to focus on Williams' voluntary confessions, because counsel had not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background."), *citing* 1 ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1, commentary, p. 4-55 (2d ed.1980).

### G.    In the case at bar, the strategic choice of counsel was not reasonable

In addition to blaming the client[9] and the client's family,[10] trial counsel also blamed other members of the defense team for their own deficiency.  Relying on trial-counsel-attestations,[11] the Respondent asserts that "counsel is not deficient when ... [its trial] experts do not discover the underlying mental health issue that should have been presented at trial."  Ans. at 39.

This assertion assumes the truth and existence of at least two materially disputed fact issues: First, the mitigation investigation was adequate, and thus, the underlying mental health issues were readily discoverable.  Second, the experts (Drs. Allen and Kessner)  prior to trial had been given the task of suggesting a defense theory to be run in the guilt/innocence phase.  Nothing in the record supports either assumption.

### 1.    Not only was the mitigation investigation itself inadequate; the themes and patterns of behavior had not been identified and developed by the mitigation investigator

The mitigation investigation was inadequate and undeveloped:

---

[9]    "Gardner did not even want a mitigation case presented ...."  Ans. at 56. This argument is contrary to and an unreasonable application of  *Rompilla v. Beard*, 545 U.S. 374, 377, 381 (2005) (even when a client is "actively obstructive by sending counsel off on false leads," and "when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial.").

[10]    "[C]ounsel explained .... that Gardner's father chose not to attend Gardner's trial, and that Gardner's mother was too 'emotionally unstable' to testify."  Ans. at 51; 2 SHCR 340-341.  *Compare Rompilla*, at n. 8 supra.

[11]    *See*  Exhibit 4: Pet. Joint Affidavit of House and Hultkrantz, p. 2 ("the issue of an abandonment rage defense was never brought up by any member of the defense team and therefore was not part of our trial strategy")

- Dr. Allen, "decided she didn't want to testify [to attachment disorder] **because of lack of information**...."  Exhibit 4: Pet. Joint Affidavit of House and Hultkrantz, p. 9. (emphasis supplied), and

- Dr. Kessner, another trial expert, attested in state habeas that she had "had a telephone conference and in person conferences with the defense attorneys and various members of the defense team.  ***I voiced my concern that there were important corroborating witnesses who were not being located and interviewed for mitigation***."  State Habeas Exhibit C:  Affidavit of Gilda Kessner, Psy.D. (emphasis supplied)

Ms. Shade not only failed to conduct an adequate investigation, she failed to develop themes and patterns of behavior from the data she had (and should have collected).  Thus, it was a practical impossibility for her to have provided basic, necessary material to the mental health experts and the trial attorneys.


### 2.    The TCCA ruled that the trial attorneys knew the mitigation investigation and development was inadequate

The trial attorneys had actual knowledge that the mitigation investigation was impaired. They attested that Shelli Schade "refused to share notes from her mitigation investigation and refused to summarize her findings in a report to the attorneys," Pet. Exhibit 4:  Jt. Affidavit of trial counsel, p. 7.

Moreover, in the September 15, 2010 order, the TCCA explicitly *refused to adopt* FF No. 67 that defense counsel "did not believe that their investigation was impaired...."[12]

Despite having actual knowledge, the trial attorneys did nothing to remedy the problem. Trial counsel ignored the inadequate work-product and the uncooperative mitigation investigator.

---

[12]    FF No. 67 recited that **defense counsel "did not believe that their investigation was impaired**," because "their mitigation expert, Shelli Schade, was 'overly close' with Applicant and his family." (Emphasis supplied)

Instead, trial counsel unreasonably made the choice to "pursue a fact-based rather than psychological defense and limit the State's rebuttal evidence," FFCL No. 28, Ans. at p. 40.

### 3. Trial counsel was constitutionally ineffective because the limitations on the mitigation investigation were not supported by reasonable professional judgment

Hence, the findings of fact are not entitled to a presumption of correctness. *See e.g.,*  FFCL Nos. 64, 63-82; (RR 23:74) (it was "part of our trial strategy ... not to put them [experts as regards mitigation] on....")

The Conclusions of Law 43, 62, 83 (trial counsel was not ineffective as alleged in Grounds 1 through and including 4) by the state court is contrary to, and an unreasonable application of *Strickland* and its progeny concerning the constitutional ineffectiveness of trial counsel.  Knowing the mitigation investigation was inadequate and failing to take steps to correct the problem, it was not reasonable for trial counsel to have chosen the course of action that they did.  *See Williams*, 529 U.S. at 396 (Counsel was ineffective because they had not "fulfill[ed] their obligation to conduct an adequate mitigation investigation of the defendant's background.").

### 4. The trial attorneys, not the mental health experts, are responsible for the theory of the case

Finally, the defense attorneys have an obligation to develop the theory of the case  –  a professional obligation they could not perform because of the known inadequate mitigation investigation.  ABA GUIDELINE 10.8 – THE DUTY TO ASSERT LEGAL CLAIMS (rev. ed. Feb. 2003) imposes on defense counsel the obligation "at every stage of the case, ... [to] consider all legal claims potentially available...."

Because the investigation was inadequate and incomplete, and because the mitigation specialist failed to identify salient themes and patterns of behaviors, defense counsel could not have developed *any* an effective theory of the case whatsoever  –  contrary to FF Nos. 44-52.   And indeed, they did not.

Trial counsel lacked the necessary information to challenge the essential elements of capital murder in guilt/innocence,  or to explain why a defendant is less morally culpable and not deserving of death in the punishment phase under any consistent theory. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 256 (2007) (in which "the testimony of Cole's mother and aunt, as well as the portions of the expert testimony suggesting that his dangerous character may have been the result of his rough childhood and possible neurological damage," must be "permitted its mitigating force beyond the scope of the special issues.").

Thus, it can not be said that it was "reasonable" for trial counsel to choose to "pursue a fact-based rather than psychological defense and limit the State's rebuttal evidence," FFCL No. 28, Ans. at p. 40.   This is because counsel had not "fulfill[ed] their obligation to conduct an adequate mitigation investigation of the defendant's background." *Williams*, 529 U.S. at 396.

 For all the aforementioned reasons, including those more fully argued in Grounds One through Four, trial counsel was constitutionally ineffective.

## CONCLUSION

For the reasons set forth above, Mr. Gardner is entitled to relief from his unconstitutional conviction and sentence.

WHEREFORE, Mr. Gardner prays that this federal court:

1.     Issue a writ of habeas corpus to him brought before it, to the end that he may be discharged from his unconstitutional confinement and restraint and/or relieved of his unconstitutional sentence of death;

2.     Grant him one or more hearings (*see* separately filed motion accompanying this petition) at which he may present any evidence in support of his claims, and allow him a reasonable period of time subsequent to any hearing this court determines to brief the issues of fact and of law raised by this Petition or such hearing.

3.     Direct that under Habeas Corpus Rule 7, the record in this case be expanded to include the "additional materials relevant to the determination of the merits of the petition" which are found in exhibits filed with this Petition.

Respectfully submitted,

Lydia M.V. Brandt
Texas Bar No. 00795262
THE BRANDT LAW FIRM, P.C.

## CERTIFICATE OF SERVICE

This certifies that on October 12, 2012, I electronically filed the foregoing document with the clerk of court for the US District Court Northern District Texas using the electronic case filing system of the court.   The electronic case filing system sent a notice of electronic filing to the following attorney of record, who has consented in writing to accept this notice as service of this document by electronic means:

Matthew Ottoway,  Assistant Attorney General
Attorney General's Office
Post Conviction Division
P.O. Box 12548
Austin, TX 78711

_____
Lydia M.V. Brandt

cc:     Mr. John Steven Gardner
        #999-516
        Polunsky Unit, TDCJ
        3872 FM 350 South
        Livingston, TX 77351-8580

EXHIBITS

Federal Habeas Exhibits

Exhibit 5: 2003 ABA Guideline 10.7 at 1015