State of Texas          }}
County of Dallas        }}

## Affidavit of Gilda Kessner, Psy.D.

**Re:** *John Steven Gardner*

Comes the Affiant, Gilda Kessner, Psy.D., who, after first being duly sworn, states the following:

1.  I am a clinical psychologist licensed and qualified to practice Psychology in the State of Texas. I have personal knowledge of the facts contained in this affidavit and am competent to testify about them.

2.  I received a Bachelor's degree in Social Work from Abilene Christian College in 1974. I received a Master's degree in Human Relations and Business from Amber University in 1987 and a Doctor of Psychology (Psy.D.) in Clinical Psychology from Baylor University in 1996. I completed three years of applied doctoral training at Baylor University by serving in three clinical settings from 1992 to1995. I concluded my doctoral degree training with an American Psychological Association accredited pre-doctoral internship in Clinical Psychology at the Arkansas Division of Mental Health Services from 1995 to 1996. During the pre-doctoral internship, I completed two rotations on the Arkansas State Hospital Forensic Inpatient Unit, evaluating and treating adults who were involved in the state criminal justice system. I was licensed to practice psychology in the State of Texas in 1997.

3.  Since becoming licensed, I have provided professional psychology services in agency settings relating to forensic and clinical psychology, with juvenile offenders. In 1996 and 1997, I was employed as an Associate Clinical Psychologist for the Texas Youth Commission. In this capacity, I developed and provided a range of consulting and psychological services in Texas' maximum-security juvenile prison system. I was instrumental in establishing the operation of the psychological services in what was at the time Texas' largest juvenile prison. I have also been employed as the Coordinator for the Detention Center Psychology Services of the Dallas County Juvenile Services. In that capacity I developed and coordinated psychotherapeutic services for detained juvenile offenders, including the design and management of a pilot project for treatment and rehabilitation of juveniles with significant criminal histories. I was Director of Treatment for the Dallas Youth Academy operated by Correctional Services Corporation under contract for Dallas County Juvenile Services. In that capacity I directed the implementation of a short-term treatment program for court ordered juvenile offenders.

**207**

John Steven Gardner

4. Since July 1998, I have maintained a private practice in clinical and forensic psychology in Dallas, Texas. My clients are both public agencies and private individuals. My practice includes forensic psychological evaluations and consultations for adult criminal and county juvenile systems. As required by the Board of Examiners of Psychologists, I have maintained continuing education in clinical psychology with a special emphasis in the area of forensic psychology.

5. I have been recognized as a psychological expert witness regarding sentencing determination issues, including mitigation and future dangerousness in state courts in Texas and I have testified in capital sentencing proceedings. I have presented at defense attorney training seminars in Texas regarding psychological issues relevant to capital sentencing.

6. I am a member of several professional organizations, including the American Psychological Association, the Texas Psychological Association and the American Association on Intellectual and Developmental Disabilities.

7. In June 2006, I was contacted by attorneys for John Steven Gardner about serving as an expert witness. Their initial inquiry was regarding mitigation issues but they later included risk assessment as an area they wanted me to cover in preparation for the capital murder trial.

8. In my consultation with Mr. House and Mr. Hulcrantz, I followed the standard of practice for forensic psychology capital sentencing evaluations. I conducted several interviews with Mr. Gardner, reviewed documents supplied to me by the attorneys and had limited interviews with family members. I interviewed his sister, Elaine Holifield by telephone and in person when she came to Texas for the trial. I did not administer any clinical psychology tests or forensic assessment instruments to Mr. Gardner.

9. In preparing for my work on the trial I reviewed documents and statements provided to me by the defense attorneys.

**Records Reviewed**
Forrest County General Hospital
First National Bank of Marin
Collin County Sheriffs Office
Southwestern Institute of Forensic Sciences at Dallas (1/28/05)
Orchid Cellmark (Laboratory Report (3/30/05)
Parkland Health and Hospital System
Texas Department of Public Safety
Irving Police Department (12/11/92)
Jones County Sheriff Department (1982, 2005)
Mississippi Crime Lab (1983)
Hinds County Coroner (1983)

John Steven Gardner

    University Hospital, Jackson MS (1983)
    Mississippi State Penitentiary
    Employment Records
    -    Wal-Mart
    -    Daycor Enterprises, Inc.
    Military Personnel Records
    Letters and Notes
    -    Tammy Gardner
    -    Justin White
    -    John Steven Gardner
    -    Lori Osborn
    -    Raquel E. B?
    Voluntary Statements
    -    Candace Akins
    -    Todd Eades
    -    Diane Glassel
    -    David Holifield
    -    Elaine Holifield
    -    Brent Mangum
    -    Jessie Mangum
    -    Stacy Moody
    -    Joyce Richardson
    -    Nell Terrell
    -    Jacquie West
    -    Erin Whitfield
    -    Williams White
    -    John White
    -    Jessica White
    -    David Young

These types and sources of data are customarily and reasonably relied upon by forensic psychology experts in coming to opinions on relevant issues in this field of expertise.

10.    I also had telephone conferences and in person conferences with the defense attorneys and various members of the defense team. I voiced my concern that there were important corroborating witnesses who were not being located and interviewed for mitigation. Ms. Shelli Schade the social worker hired by the attorneys for the mitigation investigation indicated that people in small towns would not be willing to reveal information and therefore corroborating information could not be obtained from them. The meeting with the defense team and Ms. Holifield proved to be difficult. Ms. Holifield kept looking to Ms. Schade before she would answer questions, at one point she became very tearful, and asked if she could just speak with Ms. Schade. I instructed Ms. Holifield that she was going to have to answer my

209

John Steven Gardner

questions without coaching by Ms. Schade. She stated that she was concerned if she spoke with anyone but Ms. Schade that the information could come out at trial. Ms. Schade appeared to have developed an overly close relationship with the defendant and his family members, such that she seemed to take on the role of counselor to them instead of mitigation investigator. Ms. Schade did not provide me with notes from any interviews she conducted. It was my impression that she did not provide summary notes to the attorneys either.

11. The attorneys also retained Kate Allen, Ph.D. (social worker) to address the concept of attachment and its relationship to Mr. Gardner's psychological development.

12. It is my recollection that at the time of trial the attorneys had settled that I would testify on risk assessment and Dr. Allen was going to testify on attachment. I believe I had scant information for the development of a coherent mitigation theme due to the absence of detailed and corroborated information about Mr. Gardner's background. There was an abundance of information from Mr. Gardner but without corroborating witnesses my ability to present mitigation information to the jury was necessarily very limited.

13. At the time of trial I was fully prepared to testify on the issue of risk assessment relevant to Mr. Gardner's risk for acts of violence while incarcerated in the general population for a capital sentence. I was present along with Dr. Allen who was also expecting to testify. The defense attorneys decided to rest after calling their lay witnesses and did not call the expert witnesses. I do recall that one of the attorneys stated they did not believe the State had proved its case relevant to the future danger issue.

14. I affirm that the foregoing paragraphs are true and correct to the best of my knowledge.

Subscribed to and sworn before me by Gilda Kessner, on this 27th day of May, 2009.

_Gilda Kessner, Psy.D._
Gilda Kessner, Psy.D.
Psychologist

_Mona L. St Clair_
Notary Public, State of Texas

MONA L ST CLAIR
NOTARY PUBLIC
State of Texas
Comm. Exp. 09-08-2012

My Commission expires: 09-08-2012

210