IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN STEVEN GARDNER, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-CV-610 |
| | § | (Death Penalty Case) |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| *Respondent*. | § | |

**RESPONDENT STEPHENS'S SUPPLEMENTAL ANSWER**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

MATTHEW OTTOWAY
Assistant Attorney General
    *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@texasattorney
        general.gov*

*Counsel for Respondent*

**SUPPLEMENTAL ANSWER**

## I.  Brief Accounting of the Facts and Procedural History

On January 23, 2005, John Steven Gardner put a .44 Magnum slug through Tammy Gardner's head.  20.RR.25–26, 123–26.[1]  The resulting brain damage put Tammy into a coma, 19.RR.298, but not before she called for help and identified her assailant—Gardner.  19.RR.24–27.  The massive trauma proved too much, however, and Tammy's family took her off life support because they "didn't think it would be fair to mom to [live] the rest of her life as a vegetable."  19.RR.265.  For this, Gardner was tried and found guilty of capital murder.  2.CR(219-81121-06).608.[2]

Tammy's death was hardly Gardner's first foray into violence.  Gardner shot his second wife in the chest, abdomen, and face, and her injuries induced a miscarriage, resulted in paraplegia, and eventually caused her death.  22.RR.16–20, 77–78.  Gardner abducted his third wife at knifepoint after she left him—she departed, in part, because Gardner beat her daughter so severely that the wounds on her head required seventy-eight stiches to close—an event that ended in a high-speed vehicle chase with police.  22.RR.43–53, 71–73.  His

---

[1]     "RR" refers to the transcribed statement of facts of Gardner's capital murder trial, or reporter's record, preceded by volume number and followed by page numbers.

[2]     "CR" refers to the documents filed in the state convicting court, or clerk's record, preceded by volume number and followed by trial court cause number and page numbers.  Resp't Answer 3 n.1, ECF No. 27.

fourth wife moved for and received a protective order on the basis of family violence. SX.72.[3] And his fifth wife was Tammy, whom Gardner shot in the head, killing her. This, along with significant other aggravating evidence, formed the State's overwhelming punishment case, which resulted in a sentence of death. 2.CR(219-81121-06).618–19.

The Court of Criminal Appeals denied Gardner's direct appeal on October 21, 2009, *Gardner v. State*, 306 S.W.3d 274 (Tex. Crim. App. 2009), and his state habeas application on September 15, 2010. *Ex parte Gardner*, No. WR-74030-01, 2010 WL 3583072 (Tex. Crim. App. Sept. 15, 2010). Thereafter, Gardner moved for appointment of federal-habeas counsel and filed a petition for writ of habeas corpus. Pet. Writ Habeas Corpus, ECF No. 17 [hereinafter "Pet."]. The Director responded, Resp't Answer, ECF No. 27, and Gardner replied. Pet'r's Reply, ECF No. 32.

Gardner then moved for additional-but-independent counsel on the basis of *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), *e.g.*, Mot. App't Add'l Counsel, ECF No. 49, which the Court granted by appointing additional counsel to address whether Gardner could establish cause and prejudice for any procedurally-defaulted ineffective-assistance-of-trial (IATC) claims. Order, Aug. 13, 2015, ECF No. 74.

---

[3]     "SX" refers to the exhibits proffered by the State at Gardner's capital murder trial, followed by exhibit number.

Additional-but-independent counsel has filed a "supplemental" IATC claim. Suppl. Sixth Amend. Claim Pursuant Authority *Speer/Mendoza* 1–13, ECF No. 78 [hereinafter "Suppl. Pet."].

## II. Gardner's "Supplemental" IATC Claim

Gardner alleges that state-habeas counsel should have raised the following claim in state court—trial counsel were ineffective for failing "to get the work product of their recalcitrant mitigation specialist, Shelli Schade." Suppl. Pet. 1 (internal quotation marks omitted).

Gardner—pointing to evidence in the state-court record—asserts that Schade "refused to share notes from her mitigation investigation and refused to summarize her findings in a report to the attorneys" because "[s]he was overly concerned with what could be discoverable by the State." *Id*. at 4–5 (internal quotation marks omitted). Trial counsel were deficient, Gardner alleges, because they did "[n]ot [d]emand" that Schade turn over her notes, which actually belonged to Gardner as a matter of agency law. *Id*. at 5–9.

As to prejudice, Gardner claims that by not "pry[ing]" information from "Schade's file," Dr. Gilda Kessner—one of the experts retained by trial counsel—was limited in her "ability to present mitigation information" because she was "without corroborating witnesses" as to Gardner's background. *Id*. at 9. According to Gardner, had trial counsel obtained Schade's investigatory work product, "they would have passed it on to (potentially) testifying experts

who would have then used it to inform and buttress their opinions. More fully informed opinions would have necessarily affected the trial lawyers' decision on whether or not to call experts like Dr. Kessner." *Id.* at 10–11.

As to *Martinez/Trevino*, Gardner postulates, as to prejudice, that had the "supplemental" IATC claim been presented, "there is simply no way the [state-habeas court] would have reached the same conclusions." *Id.* at 11. He claims that (1) the finding recognizing the "hiring [of] a mitigation expert" would have been qualified by the acrimony between trial counsel and Schade, (2) the finding that trial counsel did not believe their mitigation investigation was impeded despite Schade's uncooperativeness would not have been made, and (3) Dr. Kessner's opinion would "have been developed into something more had the complete file been provided." *Id.* at 11–12.

As to cause, Gardner asserts that, while "there is substantial overlap between Gard[ner]'s [IATC] claim and the nucleus of IATC claims presented . . . in state habeas," state-habeas counsel erred by presenting "a pure *Wiggins* [*v. Smith*, 539 U.S. 510 (2003)] claim that reduced . . . the argument [to] 'trial counsel should have investigated further.'" *Id.* at 12. In this form, Gardner contends "relief was denied because trial counsel[] were afforded a wide latitude of professional judgment." *Id.* However, "when the issue becomes failure to pry documents from a court-appointed expert who

would not be paid until those trial lawyers signed the expert's voucher, that latitude narrows considerably." *Id.*

## ARGUMENT

### I. Gardner's "Supplemental" IATC Claim Was Presented and Adjudicated in State Court Making *Martinez/Trevino* Inapplicable.

To make the assertion that state-habeas counsel failed to present the "supplemental" IATC in state court, Gardner engages in linguistic and legal gymnastics. Both the legal and factual bases of the "supplemental" IATC claim were before the state court and the claim was adjudicated on the merits. As a result, *Martinez/Trevino* has no work to do.

In order to exhaust, a "prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (*per curiam*)). Here, state-habeas counsel, in state-habeas claims three and four, identified the correct federal precedent—*Strickland v. Washington,* 466 U.S. 668 (1984). 1.SHCR.43–44, 62–63.[4] Accordingly, the legal framework of the "supplemental" IATC claim was before the state court. *See Baldwin*, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim . . . by citing

---

[4] "SHCR" refers to the documents filed in the state habeas court, or state habeas clerk's record, preceded by volume number and followed by page numbers.

in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds."). So too were the "facts" supporting the "supplemental" IATC claim before the state court:

- trial counsel must conduct, or cause to be conducted, a thorough mitigation investigation, 1.SHCR.44–45, 63–64;

- defense team members are required "to provide counsel with *documentary evidence* of the investigation," 1.SHCR.45, 64 (emphasis added) (internal quotation marks omitted);

- despite the document-provision obligation on defense team members, trial counsel "*bears ultimate responsibility for the performance of the defense team*," 1.SHCR.45–46, 64–65 (emphasis added) (internal quotation marks omitted);

- trial counsel performed deficiently because Schade conducted an inadequate mitigation investigation, including the failure to contact corroborating witnesses and to "compile[] and *document*[]" "a complete psycho-social history," 1.SHCR.46–49, 51, 65–66 (emphasis added);

- because of these inadequacies, "when experts were retained, *the trial attorneys failed to provide the experts with a documented social history*," 1.SHCR.49 (emphasis added);

- specifically, Dr. Kessner stated that she was concerned about insufficient corroboration of information and that "*Schade did not provide* [*her*] *with notes from any interviews she conducted*," which limited her "ability to present mitigation information" about Gardner, 1.SHCR.50–51 (emphasis added);

- after state-habeas counsel's mitigation specialist, Toni Knox, conducted an adequate mitigation investigation "friends and a church member . . . provided corroborating information to some of [Gardner's] history," 1.SHCR.51, 65–66;

- and, with this "crucial" corroborating information, Dr. Kessner could have developed "a unified theme of abandonment rage and

trauma" that would have "supported a verdict other than death." 1.SHCR.52–61, 67–72.

The factual allegations in state court mirror those in the "supplemental" IATC claim. *Compare* Suppl. Pet. 4–12, *with* 1.SHCR.44–72. In other words, Gardner's slight re-working of state-habeas claims three and four may "*supplement*[], but do[] not *fundamentally alter*, the claim[s] presented to state courts."[5] *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386–87 (5th Cir. 2003)).

In fact, Gardner concedes that, for the most part, his "supplemental" IATC claim was before the state court. Suppl. Pet. 2 ("*Much* of the information presented in the preceding paragraph was presented in Claims 3 . . . and 4" in state court. (emphasis added)), 12 ("To be sure, there is *substantial overlap* between Gard[ner]'s *Martinez/Trevino* claim and the nucleus of IATC claims presented both in state habeas and in the opening writ." (emphasis added)). Further, Gardner's numerous citations to the *state-court record* in support of the "supplemental" IATC claim prove that it was presented in state court. *See, e.g., id*. at 4 (citing the trial attorneys' affidavit before the state-habeas court), 5 (citing Dr. Kessner's state-habeas affidavit). Thus, it is clear that both the

---

[5] Acknowledging that the claim was not fundamentally altered is not entirely apropos. Usually, in the "factual exhaustion" scenario, an inmate has *added* evidence to his claim in federal habeas that was not before the state courts. *See, e.g., Morris*, 413 F.3d at 495. But here, *all* of the evidence that Gardner relies upon in formulating his "new" IATC claim was before the state court.

law and the "facts" of the "supplemental" IATC claim were raised in Gardner's state-habeas application.

With the legal and factual bases before the state court, the next question is whether the "supplemental" IATC claim was adjudicated on the merits, which is an easy question to answer—yes, it is presumed. *See Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits."); *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits.").

But more than a presumption, Gardner points to *state-court findings* addressing the "supplemental" IATC claim. *See* Suppl. Pet. 11–12 (citing Findings 32, 64, and 67,[6] of the state-habeas trial court's findings). Namely, (1) that the trial attorneys hired Schade, (2) that, despite some uncooperativeness on Schade's part, the trial attorneys did not feel it impeded the overall mitigation investigation, and (3) that there was no prejudice from Dr. Kessner's revised opinion after a "full" investigation had been completed

---

[6] While Gardner cites Finding 67, the Court of Criminal Appeals did not adopt it. *Ex parte Gardner*, No. WR-74,030-01, 2010 WL 3583072, at *1 (Tex. Crim. App. Sept. 15, 2010). Thus, Gardner can find no harm resulting from a non-existent finding.

by the state-habeas mitigation specialist. *Id.* That there exists state-court findings for Gardner to cite is per se evidence of state-court adjudication—they would not exist had the claim not been raised in state court. Accordingly, as a matter of presumption and of fact, the "supplemental" IATC claim was adjudicated on the merits in state court.

Consequently, because there is state-court adjudication of the "supplemental" IATC claim, *Martinez/Trevino* does not apply to this case. *See Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) ("We conclude that *Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted."). As such, the Director would ask the Court to deny all of Gardner's claims for the reasons set forth in the Director's previously-filed answer. Resp't Answer 14–118.

## II. Alternatively, Assuming No State-Court Presentment, Gardner Fails to Prove a Substantial IATC Claim or the Ineffectiveness of State-habeas Counsel.

### A. The *Martinez/Trevino* standard.

To succeed in establishing cause to excuse the procedural default of his ineffective assistance of trial counsel claims, [Petitioner] must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application.

*Chanthakoummane v. Stephens*, No. 15-70007, 2016 WL 760912, at *8 (5th Cir. Feb. 25, 2016) (alterations in original) (quoting *Preyor v. Stephens*, 537 F. App'x 412, 412 (5th Cir. 2013)). "'[T]he petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice.'" *Id.* (alteration in original) (quoting *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013)).

## B.    The *Strickland* standard.

In turn, the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), governs IATC claims. To prove ineffectiveness, an inmate must establish both that the attorney's actions were deficient and that such deficiency prejudiced the defense. *Id.* at 687. A failure to prove either results in denial of the claim. *Id.* at 697.

To establish deficient performance an inmate must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. However, there is a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 688. Concerning prejudice, an inmate must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Generally, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review,

the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105.

**C.    The "supplemental" IATC claim is insubstantial.**

If it is supposed that the "supplemental" IATC claim is unexhausted and procedurally defaulted, Gardner does not meet the *Martinez/Trevino* standard because the "supplemental" IATC claim is insubstantial.

Notably, not one defense team member complains that Schade did not share the *results* of her investigation with them; rather, they complain that it was not in *written* form.  *See* 1.SHCR.124 (Schade did not "provide the experts with a *documented* social history (emphasis added)); 210 ("Schade did not provide me with *notes* from any interviews she conducted." (emphasis added)); 2.SHCR.343 ("Schade refused to share *notes* from her mitigation investigation and refused to summarize her findings in a *report* to the attorneys." (emphasis added)).    Thus, Gardner fails to prove the first and necessary factual component of the "supplemental" IATC claim—that Schade *withheld* any information from the defense team.  Because the premise of the "supplemental" IATC claim is without any factual support, the claim is conclusory and fails. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

To be sure, state-habeas counsel's mitigation specialist, Knox, obtained the records of "Randi Ray (licensed private investigator), *Shelli Schade*, LMSW (social worker, LMSW), and Gilda Kessner, Psy.D (psychologist)," yet identified no information that had been collected but not considered by the defense team. 1.SHCR.124 (emphasis added). Indeed, "*much*" of Knox's re-investigation of Gardner's history "was obtained from previous notes and interviews by the private investigator, consulting psychologist, and *mitigation specialist*." 1.SHCR.125 (emphasis added); *see also* 1.SHCR.144 ("I used handwritten notes from the mitigation investigator, Shelli Schade."), 176 ("Shelli Schade—Mitigation notes, interview notes, timeline, genogram, records, invoices, correspondence with attorneys, Steve Gardner letters, Steve's writings on his social history, drawings done by Steve Gardner, Letters Steve wrote in jail to Tammy Gardner, emails."). Gardner presumably has access to these files but has not identified a *single* shred of information withheld by Schade. Worse than being conclusory, Gardner's "supplemental" IATC claim is affirmatively refuted by the state-court record.[7]

_____

[7]     Gardner frames the performance question as this: "What strategic or tactical reason did the trial lawyers have for neglecting to make Ms. Schade produce her file after she refused to do so in response to their request for the same because this non-lawyer/social worker self-proclaimed a false legal premise that she would thereby trigger a reciprocal discovery obligation?" Suppl. Pet. 9. This question, however, assumes that Schade actually withheld information, which Gardner has not proven and which is disproven by the state-habeas record. And it assumes that trial counsel must have a strategic or tactical reason for every action or inaction, but that is not the relevant inquiry. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The

Moreover, without identifying the supposedly non-disclosed information, Gardner cannot demonstrate prejudice. *Strickland* "requires a 'substantial,' not just 'conceivable,' likelihood of a different result" to prevail. *Pinholster*, 563 U.S. at 189 (quoting *Richter*, 562 U.S. at 112). To do this in a failure-to-investigate context, an inmate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). This specificity is necessary because, to assess the likelihood of a different result, reviewing courts "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 539 U.S. at 534. Unless Gardner identifies what part of Schade's mitigation investigation was withheld from the trial team, he fails to show a reasonable probability of a different result. Thus, Gardner's "supplemental" IATC claim is insubstantial because he makes no showing that the jury's decision would have been different, let alone by a reasonable probability.

In addition to the dearth of prejudice evidence, the state-court record affirmatively negates the contention that he was prejudiced. For purposes of the failure-to-investigate and failure-to-present IATC claims—state-habeas

---

relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). And it is absolutely reasonable for counsel to not require a written product so long as the substance of the investigation was conveyed to the defense team.

claims three and four—Gardner alleged that trial counsel's discovery and presentation of mitigation was ineffective. 1.SHCR.43–72. In an attempt to prove those allegations, Knox and Dr. Kessner reviewed everything generated by the defense team, including Schade's written work product. 1.SHCR.110–12 (documents reviewed by Dr. Kessner), 176 (documents reviewed by Knox). Knox and Dr. Kessner then critiqued the mitigation investigation and presentation, concluding that had there been a better investigation the theory of abandonment rage could have been identified and presented, *along with* testimony from undiscovered witnesses. 1.SHCR.112–18, 124–37. Thus, state-habeas claims three and four incorporate the allegations made in the "supplemental" IATC claim and *add* to them by alleging that there could have been better presentation of the discovered mitigation evidence *in addition to* the presentation of undiscovered evidence. In other words, state-habeas claims three and four subsume the "supplemental" IATC claim's prejudice prong at the very least.

As such, because state-habeas claims three and four encompass *and expand* the "supplemental" IATC claim, the prejudice evidence in state court was necessarily *greater* than that alleged here—nothing—yet the state court reasonably found no harm. *See* Resp't Answer 83–90. If Gardner cannot prove entitlement to relief with a *broader* prejudice allegation, he certainly cannot find relief with his narrowly-bounded "supplemental" IATC claim. *Cf. Davis*

*v. Ayala*, 135 S. Ct. 2187, 2198–99 (2015) (an inmate cannot demonstrate substantial and injurious harm, the more-difficult-to-meet *Brecht* standard, if he or she cannot prove the unreasonableness of a harmless-error ruling under the more liberal AEDPA standard). In short, because Gardner made a more robust assertion of prejudice in state court—the insufficient use of evidence known *and* unknown to the defense team—he cannot succeed on his circumscribed "supplemental" IATC claim.

### D. State-habeas counsel's "failure" to present the "supplemental" IATC claim was not ineffective.

Assuming that the "supplemental" IATC claim was not presented in state court, its absence is not ineffective and, thus, Gardner cannot avail himself of *Martinez/Trevino*.

First, because "there was no merit to Gar[dner]'s ["supplemental" IATC] claim . . . habeas counsel was not ineffective in failing to raise the claim at the first state proceeding." *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013); *see Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("[A state-habeas] counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective."). As demonstrated above, *see supra* Argument II(C), Gardner fails to prove either deficient performance or prejudice as to trial counsel, so state-

habeas counsel was not ineffective by omitting this meritless IATC claim in state court.

Second, counsel, including collateral-review counsel, have enormous discretion in their claim-presentation choices. Counsel may "winnow[] out weaker arguments . . . and focus[] on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). And counsel "is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Here, there are at least a couple reasons why state-habeas counsel could have made a reasonable decision to omit the "supplemental" IATC claim from Gardner's state-habeas application.

State-habeas counsel could have recognized the oral-versus-written distinction mentioned above—that the mitigation specialist, Schade, provided the defense team with the substance of her mitigation investigation, just not in writing. *See supra* Argument II(C). But, unless something was actually *withheld* by Schade, which Gardner still does not prove, state-habeas counsel could have recognized that relief on such a nitpicky point was unlikely and therefore did not raise it.

State-habeas counsel could have also reasonably believed that the failure-to-investigate (claim three) and failure-to-present (claim four) IATC

claims fully encapsulated the "supplemental" IATC claim. In other words, because the asserted prejudice for these two claims fully subsumed any prejudice potentially flowing from mitigation evidence allegedly withheld by Schade, there was no point in separately raising the "supplemental" IATC claim.

A reviewing court must "affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.'" *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (quoting *Pinholster v. Ayers*, 590 F.3d 651, 692 (9th Cir. 2009) (Kozinski, C.J., dissenting)). Because a reasonable attorney could have omitted the "supplemental" IATC claim from Gardner's state-habeas application, he fails to prove that state-habeas counsel's actions were deficient.[8]

---

[8] Gardner argues that state-habeas counsel "self-imposed a higher hurdle" by pleading "a pure *Wiggins*" claim. Suppl. Pet. 3. But the cases that he "adduces . . . in support of" his "supplemental" IATC claim are all "pure" *Strickland* claims, which is all that *Wiggins* is too. *Id.* at 8; *see Wiggins*, 539 U.S. at 534 ("The mitigating evidence counsel failed to *discover* and *present* in this case is powerful." (emphasis added)).

In *Goodman v. Bertrand*, the inmate identified the witness counsel should have called and what she would have said if she testified. 467 F.3d 1022, 1030 (7th Cir. 2006). Likewise, in *Matthews v. Abramajtys*, the inmate pointed out the omitted witnesses and what their testimony would have been. 319 F.3d 780, 789–90 (6th Cir. 2003). And the same in *Pavel v. Hollins*, where, once more, the inmate pinpointed the missing witnesses and what they would have testified about if called. 261 F.3d 210, 218–28 (2d Cir. 2001). These cases all prove that, in order to complain about omitted evidence as a result of ineffective assistance, no matter the reason for omission (for example, poor investigation, bad strategic decision, or inadvertence), the inmate must still demonstrate what it is that should have been presented but was not because of incompetent representation. This is exactly the type of IATC claim that state-habeas counsel raised—she identified the alleged deficiencies and put on

Further, Gardner fails to prove that the omission of the "supplemental" IATC claim from his state-habeas application was prejudicial. Stated another way, he fails to prove that it is reasonably probable the state-court decision would have been different had he raised the "supplemental" IATC claim. This is plain—the allegation that Schade was less than cooperative was actually before the state-habeas court but it still denied relief. Simply repackaging these allegations into a separate claim does not make it more likely that relief would have been granted. And because Gardner still fails to prove that anything was actually withheld by Schade, the state court's decision surely would have remained the same had the "supplemental" IATC claim been before it. As such, Gardner has failed to prove that state-habeas counsel was deficient or that such deficiencies resulted in prejudice and he, therefore, cannot utilize *Martinez/Trevino* to reach the merits of his "supplemental" IATC claim.

---

evidence that should have been presented but was not because of trial counsel's substandard performance—and, therefore, Gardner's case law actually supports state-habeas counsel's pleading conduct.

While Gardner tries to ignore the cause-and-effect requirement of *Strickland*, his argument eventually boils down to, had the trial attorneys obtained the mitigation evidence supposedly withheld by Schade, it would have "affected the[ir] decision on *whether or not to call* experts like Dr. Kessner." Suppl. Pet. 10 (emphasis added). The proof of prejudice for such an IATC claim would have been what Dr. Kessner could have testified to had she been called, *which is exactly what was presented in state court*. 1.SHCR.112 ("I have concluded based on the records and literature review, that had I been allowed to testify in the 2006 Case about the impact of developmental trauma cited by family members, that I could have provided context for the jury to understand the etiology of Mr. Gardner's personality and behavior.").

### III. Intervening Case Law Further Demonstrates the Reasonableness of the State Court's Decision.

As part of the order providing for additional counsel, the Court also granted the Director's motion to brief intervening, relevant Fifth Circuit precedent. Order, Aug. 13, 2015, at 2. That briefing follows.

Gardner seeks federal-habeas relief by alleging that his attorneys should have presented evidence of "abandonment rage" in the guilt-innocence stage of trial (to negate the retaliation manner and means of capital murder), Pet. 27, 34–55, the punishment stage (as mitigating evidence), Pet. 88–128, and between the two in order to present a "consistent" defense. Pet. 63–87.

Pertinent to Gardner's abandonment-rage claims is the recently issued opinion in *Rayford v. Stephens*, 622 F. App'x 315 (5th Cir. 2015). The inmate in *Rayford* claimed that the two murders he committed stemmed from "abandonment rage" and that his attorneys should have presented this defensive theory at trial. *Id*. at 320. The state-habeas court rejected the claim noting that abandonment rage "would only show a motive for the murders[,] would not negate *mens rea* or otherwise excuse the killings . . . [and] would not be mitigating." *Id*. at 322, 336. The Fifth Circuit upheld the denial of federal habeas relief finding that the state-court decision was objectively reasonable. *Id*. at 336–37.

In affirming the denial of relief, the Fifth Circuit recognized that "the 'abandonment rage' theory would essentially be double edged." *Id*. at 337. This is because "while the theory would offer a *reason* for Rayford's violent rage, it would simultaneously undercut his argument on the future dangerousness issue." *Id*. Thus, trial counsel was not deficient because "'a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.'" *Id*. (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)). Like in *Rayford*, Gardner failed to prove trial counsel's deficiency in failing to investigate abandonment rage or that any harm came of the omission. Resp't Answer 63–96. And because abandonment rage is not a winning punishment theme, as demonstrated by *Rayford*, trial counsel were not deficient in failing to make this a consistent theme between both phases of trial. Resp't Answer 49–63. Thus, like the inmate in *Rayford*, Gardner cannot obtain habeas relief as to his abandonment-rage claims. *See Rayford*, 622 F. App'x at 336–37. The Director respectfully requests that the Court deny Gardner's IATC claims related to abandonment rage for the reasons previously briefed. Resp't Answer 49–96.

## CONCLUSION

Gardner's "supplemental" IATC claim was raised and rejected in state court but, even if it was not, the claim is insubstantial and state-habeas counsel was not ineffective for failing to raise it, all of which means that *Martinez/Trevino* provides Gardner no relief. Thus, the Director respectfully requests that the Court deny Gardner federal-habeas relief.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
    *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Fax: (512) 320-8132

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I do herby certify that on March 10, 2016, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Lydia M.V. Brandt
THE BRANDT LAW FIRM, P.C.
P.O. Box 326
Farmersville, Texas 75442

Seth Kretzer
LAW OFFICES OF SETH KRETZER
440 Louisiana Street, Suite 200
Houston, Texas 77002

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General