UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN STEVEN GARDNER | ) | |
|     Petitioner | ) | |
| | ) | 1:10-CV-610 |
| v. | ) | |
| | ) | |
| WILLIAM STEPHENS, Director | ) | |
| Texas Department of Criminal Justice, | ) | (Death Penalty Case) |
| Correctional Institutions Division, | ) | |
|     Respondent | ) | |

**SUPPLEMENTAL REPLY TO
STEPHEN'S SUPPLEMENTAL ANSWER [Doc #79]
[which relies on *Rayford v Stephens*, Doc #79, pp. 20-21 only]**

For all the reasons set forth in Doc #80, undersigned counsel Brandt files this Reply to Stephen's Supplemental Answer (limited to the *Rayford* argument at pp. 20-21, Doc 79). Contrary to the Respondent Stephens assertion, *Rayford* is not applicable at all. The applicable precedent is *Walbey v. Quarterman*, 309 Fed. Appx. 795, 806-807, 2009 WL 113778 (5th Cir. 2009), and *Roberson v. Stephens*, 2015 WL 3396822, at *7 (5th Cir. May 27, 2015), *quoting Jackson v. State,* 160 S.W.3d 568, 573 (Tex. Crim. App. 2005).

# TABLE OF CONTENTS

I.     Respondent Stephens mistakenly relies on *Rayford v. Stephens*, which is irrelevant in the case-at-bar. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    In *Walbey*, the Fifth Circuit granted habeas relief. Trial counsel's performance was deficient because only the aggravating, and not mitigating, aspects of double-edged evidence was presented. Its omission was prejudicial. In *Gardner*, abandonment rage evidence is double-edged, and like *Walbey*, its omission by defense counsel was deficient and prejudicial. . . . . . . . . . . . . . 5

III.   In *Roberson v. Stephens*, 2015 WL 3396822, 614 Fed. Appx. 124 (5th Cir. May 27, 2015), the Fifth Circuit recognized that Texas law admits relevant mental impairment in guilt/innocence to negate the *mens rea* element of a specific offense. In *Gardner*, the abandonment rage evidence should have been before the jury for this very same reason. . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I. **Respondent Stephens mistakenly relies on *Rayford v. Stephens*, which is irrelevant in the case-at-bar**

In his Supplemental Answer, Respondent Stephens pleads:

Gardner seeks federal-habeas relief by alleging that his attorneys should have presented evidence of "abandonment rage" in the guilt-innocence stage of trial (to negate the retaliation manner and means of capital murder), Pet. 27, 34–55, the punishment stage (as mitigating evidence), Pet. 88–128, and between the two in order to present a "consistent" defense. Pet. 63–87.

Pertinent to Gardner's abandonment-rage claims is the recently issued opinion in *Rayford v. Stephens*, 622 F. App'x 315 (5th Cir. 2015). The inmate in *Rayford* claimed that the two murders he committed stemmed from "abandonment rage" and that his attorneys should have presented this defensive theory at trial. *Id*. at 320. ***The state-habeas court rejected the claim noting that abandonment rage "would only show a motive for the murders[,] would not negate mens rea or otherwise excuse the killings . . . [and] would not be mitigating."*** *Id*. at 322, 336. The Fifth Circuit upheld the denial of federal habeas relief finding that the state-court decision was objectively reasonable. *Id*. at 336–37.

***In affirming the denial of relief, the Fifth Circuit recognized that "the 'abandonment rage' theory would essentially be double edged."*** *Id*. at 337. This is because "while the theory would offer a *reason* for Rayford's violent rage, it would simultaneously undercut his argument on the future dangerousness issue." *Id*. Thus, trial counsel was not deficient because "'a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.'" *Id*. (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)). Like in *Rayford*, Gardner failed to prove trial counsel's deficiency in failing to investigate abandonment rage or that any harm came of the omission. Resp't Answer 63–96. And because abandonment rage is not a winning punishment theme, as demonstrated by *Rayford*, trial counsel were not deficient in failing to make this a consistent theme

>between both phases of trial. Resp't Answer 49–63. Thus, like the inmate in *Rayford*, Gardner cannot obtain habeas relief as to his abandonment-rage claims. *See Rayford*, 622 F. App'x at 336–37. The Director respectfully requests that the Court deny Gardner's IATC claims related to abandonment rage for the reasons previously briefed. Resp't Answer 49–96.

(Emphasis supplied) [Doc #79, pp. 20-21].

Contrary to the Respondent Stephens assertion, *Rayford* is not applicable at all. As more fully discussed below, the applicable precedent is *Walbey v. Quarterman*, 309 Fed.Appx. 795, 806-807, 2009 WL 113778 (5th Cir. 2009). In *Walbey*, the Fifth Circuit granted habeas relief finding the state court's decision contrary to and an unreasonable application of law, because the mitigating aspect of double-edged evidence was not presented by defense counsel, and its absence was prejudicial. Likewise, also applicable is the Fifth Circuit's holding in *Roberson v. Stephens*, 2015 WL 3396822, at *7 (5th Cir. May 27, 2015), *quoting Jackson v. State,* 160 S.W.3d 568, 573 (Tex. Crim. App. 2005), in which the Fifth Circuit recognized that Texas law admits relevant mental impairment evidence to negate the *mens rea* element of an offense.

>   **II. In *Walbey*, the Fifth Circuit granted habeas relief. Trial counsel's performance was deficient because only the aggravating, and not mitigating, aspects of double-edged evidence was presented. Its omission was prejudicial. In *Gardner*, abandonment rage evidence is double-edged, and like *Walbey*, its omission by defense counsel was deficient and prejudicial**

Respondent Stephens contends that abandonment rage evidence is unavailing because its introduction in the punishment phase "would have undercut [Gardner's] argument on the future dangerousness issue." *Id.* Stephens completely ignores that *the jury was presented with **all** of the aggravating aspects of this evidence by the prosecution*. Yet not a single mitigating aspect of this "double-edged" evidence had been presented to the jury to explain why Gardner was less morally culpable and not deserving of death.

Indeed, Respondent Stephens recited from the direct appeal opinion that graphically detailed the aggravating aspect of abandonment rage evidence:

> "[John Steven Gardner] and Tammy Gardner had a relatively short, but violent, marriage. ...." [Doc #27, p.4];

> "Tammy told Jessie that one time [Gardner] shoved her into a bookcase, then hit her and gave her a black eye. Jacquie said that Tammy once had a large bruise running diagonally across her face. When confronted, Tammy matter-of factly admitted that [Gardner] had hit her in the face with a hammer; [Doc #27, p.4];

> "[Tammy Gardner had called 911 and] said that she couldn't hear the dispatcher because her ears were still ringing from gunshots and that her

head hurt and "there was blood everywhere. .... The dispatcher had to yell and repeat herself because the woman sounded like she was choking and vomiting." [Doc #27, p.6].

The mitigating aspects of this evidence would have provided a context for the jury to understand the etiology of Mr. Gardner's personality and behavior. This is because events taking place at critical developmental periods for trust, interpersonal relationships and self-concept had a damaging effect on his ability to relate to others in an intimate and sexual way. *See* Hab. Pet. [Doc #17], Exhibit C: Affidavit of Gilda Kessner, Psy.D., and citing Donald G. Dutton. (2002). The Neurobiology of Abandonment Homicide, Aggression and Violent Behavior, 7, 407-421; Donald G. Dutton and Greg Kerry, Modus Operandi and Personality Disorder in Incarcerated Spousal Killers, 22 International Journal of Law & Psychiatry 287, 287 (1999a).

In *Walbey*, the Fifth Circuit granted habeas relief recognizing the importance of providing the jury with the mitigating aspect of double-edged evidence, particularly when the aggravating aspect of this double-edged evidence is before the jury. *Walbey v. Quarterman*, 309 Fed.Appx. 795, 806-807, 2009 WL 113778, at *10 (5th Cir. 2009) (Granting habeas relief, reasoning among things, that "much of the evidence of Walbey's petty crimes and burglaries came out during the state's presentation at his punishment-phase hearing. The state had thus already introduced the aggravating 'edge' of some of the evidence it now contends is double-edged. At

a minimum, the mitigating nature of that evidence, such as the fact that Walbey stole to survive, could have demonstrated why Texas's evidence of past criminal behavior was double-edged.").

The Respondent Stephens' position also contradicts fundamental Eighth Amendment principles. The Supreme Court wrote: "our cases had firmly established that sentencing juries must be able to give meaningful consideration and effect to ***all*** mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime ***or his potential to commit similar offenses in the future***." (Emphasis supplied) *Abdul Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).

Moreover, the deficient performance of Gardner's trial counsel in failing to present the mitigating edge of this double-edged evidence is prejudicial. *Walbey v. Quarterman*, 309 Fed. Appx. 795, 805, 2009 WL 113778, at *9, n. 46 (5th Cir. 2009), *citing* "*Williams v. Taylor*, 529 U.S. 362, 396 (2000) (addressing double-edged evidence in the context of a performance inquiry, but subsequently finding the failure to introduce the mitigating evidence, which contained the doubled-edged evidence, prejudicial)."

Hence, where as in Mr. Gardner's case, the jury was "precluded from considering and giving effect to mitigating evidence [the state court's ruling is]

contrary to, and an unreasonable application of, clearly established federal law." *Abdul Kabir v. Quarterman*, 550 U.S. 233 (U.S. 2007); 28 U.S.C. § 2254(d)(1). The state court's ruling that Gardner's trial counsel were not ineffective for failing to investigate, develop, and present the abandonment rage evidence and theory, was also an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1)(2). Habeas relief must be granted.

**III.  In *Roberson v. Stephens*, 2015 WL 3396822, 614 Fed. Appx. 124 (5th Cir. May 27, 2015), the Fifth Circuit recognized that Texas law admits relevant mental impairment in guilt/innocence to negate the *mens rea* element of a specific offense.  In *Gardner*, the abandonment rage evidence should have been before the jury for this very same reason**

Relying on *Rayford*, Respondent Stephens cursorily recites (with no discussion) that Gardner seeks federal-habeas relief by alleging that his attorneys should have presented evidence of "abandonment rage" in the guilt-innocence stage of trial (to negate the retaliation manner and means of capital murder), Pet. 27, 34–55...." Stephens then asserts that in *Rayford* "the state-habeas court rejected the claim noting that abandonment rage "would only show a motive for the murders[,] would not negate *mens rea* or otherwise excuse the killings . . . [and] would not be mitigating." Id. at 322, 336.  Finally, Stephens states that in *Rayford*, the Fifth Circuit upheld the denial of federal habeas relief finding that the state-court decision was objectively reasonable. *Id*. at 336–37. and that Doc. #79, Supp. Ans. at 20.

Respondent Stephens' reliance on *Rayford* is mistaken.  The applicable case is *Roberson v. Stephens*, 2015 WL 3396822, 614 Fed. Appx. 124 (5th Cir. May 27, 2015).  In *Roberson v. Stephens*, 2015 WL 3396822, 614 Fed. Appx. 124 (5th Cir. May 27, 2015), the Fifth Circuit rejected the state court's reasoning that excluded[1]

---

[1]  *Roberson* rejected the ruling of the Texas Court of Criminal Appeals, which

> ... on direct appeal, held that the testimony of Dr. Krusz was properly excluded not because of a categorical rule like that in *Clark*, and not because the evidence ran

mental impairment evidence. *Roberson* recognized that "Texas allows evidence that is 'presented, not as part of an attempted affirmative defense, but instead as an attempt to negate the *mens rea* element of the charged offense,' 'assuming it meets the requirements of Rule 403,'" *Roberson*, at *12, *quoting Jackson v. State,* 160 S.W.3d 568, 573 (Tex. Crim. App.2005) at *7. Following therefrom, the *Roberson* court held that "[t]he Supreme Court has made clear that "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense...." and granted a certificate of appealability (COA). *Id*.

In *Gardner*, the affidavit of Dr. Kessner, as well as the research literature Dr. Kessner relied on, reflects that abandonment rage has a neurobiological component. It would have explained that this "pattern of domestic violence" by Gardner – as the prosecutor described it – was **_not_** the product of volitional, evil intent. Instead it was a product of brain impairment, that originated in early critical developmental periods of Gardner's childhood.² Thus, abandonment rage evidence and theory is relevant

---

<p style="padding-left: 2em;">afoul of Rule 403, but because it was "not relevant as to the appellant's ability to form the requisite <i>mens rea</i> for the offense." <i>Id.</i> at *8. The court held instead that the expert testimony "was merely being used as a mental-health defense not rising to the level of insanity." <i>Id.</i></p>

*Roberson*, at *12.

² <u>Compare</u> DONALD G. DUTTON. (2002). *The Neurobiology of Abandonment Homicide*, *Aggression and Violent Behavior, 7,* 407-421.

<p style="padding-left: 2em;">"**.... It is found that the orbitofrontal cortex (OFC) is implicated in control of**</p>

evidence of mental impairment that would have been admissible in guilt/innocence to negate the *mens rea* element of capital murder. TEX. CODE CRIM, PROC. 38.26(a).[3]

It is of no consequence (as Respondent Stephen's seems to imply), that like *Rayford*, the abandonment rage evidence in *Gardner* would have been evidence of motive. The prosecutor's closing argument seems to be telling the jury that the State's evidence does in fact show motive: Gardner acts violently toward any woman who attempts to abandon him. *See* RR 23: 85 ("all of this defendant's adult life, he has been violent and abusive toward women and children. It's been a behavior, a

---

> *aggressive impulses*. This cortical area matures during the critical ''rapprochement subphase'' of early development (1.5–2 years). Attachment dysfunction during this period may interfere with critical development. It is found that low levels of serotonin (5-HT) and high levels of norepinephrine (NE) are implicated in aggression. It is also found that low levels of 5-HT and high levels of NE are long-term neurobiological sequelae of trauma. Attachment trauma can occur during the rapprochement subphase. ***It is suggested that a biological basis may serve to connect early trauma experience with a specific rage response to abandonment and spousal homicide. Neural networks containing malignant memories may be the neural mechanism by which perceived abandonment generates such symbolic terror and rage.***"

<u>with</u> prosecutor's argument ("all of this defendant's adult life, he has been violent and abusive toward women and children. It's been a behavior, a pattern in his life that has repeated over and over,...." (RR 23: 85)).

[3]   Since at least 1925, Texas statutory law permitted the admission of relevant "condition-of-the-mind" evidence in homicide cases. In its current form, TEX. CODE CRIM. PROC. art. 38.36 provides:

(a)   In all prosecutions for murder, ***the state or the defendant shall be permitted to offer*** testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with ***all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense***.

pattern in his life that has repeated over and over,...."). 

Thus, defense counsel missed a crucial opportunity to make maximum use of undisputed facts already put into evidence by the State of Texas.  *See* NATIONAL LEGAL AID AND DEFENDER ASSOCIATION, *Guidelines for Criminal Defense Representation* (1995).  ABA GUIDELINE 11.7.1 (1989) (Having an effective theory of the case for life is a national standard of practice when  representing persons accused of capital crimes);  Steven Lubet, MODERN TRIAL ADVOCACY: ANALYSIS & PRACTICE 8-9  (NITA 2nd ed. 1999)(An effective theory of the case satisfies the following essential elements:  It is logical.  It speaks to the legal elements of the case.  It is simple.  A good theory makes maximum use of undisputed facts.  It relies as little as possible on evidence that may be hotly controverted, implausible, inadmissible, or otherwise difficult to prove.  It is easy to believe. ).

In the hands of the defense, this evidence would have educated the jury that Gardner's "pattern of domestic violence," was a serious and significant mental health impairment, which originated in early critical developmental periods of Gardner's childhood, and negated the *mens rea* element of capital murder.  This evidence would have supported at the outset why Gardner, if guilty, was guilty of a lesser offense than capital murder, which was admissible under TEX. CODE CRIM. PROC. 38.36(a).

More importantly, even had abandonment rage evidence been introduced in guilt/innocence and the jury had returned a verdict of guilty of capital murder, the theme of abandonment rage and trauma would have naturally segued into the punishment phase to explain how and why Gardner was less morally culpable and not deserving of death, *see supra, II.*

In summary, *Rayford v. Stephens*, 622 F. App'x 315, 2015 WL 2407644 (5th Cir. 2015) is irrelevant to *Gardner*'s IAC claims concerning "abandonment rage" evidence.

<div style="text-align: right;">

Respectfully submitted,

*/s/ Lydia M.V. Brandt*

_____
Lydia M.V. Brandt, Esq.
lydiabrandt566@gmail.com
THE BRANDT LAW FIRM, P.C.
Texas Bar No. 00795262
P.O. Box 326
Farmersville, TX 75442-0326
(972) 972-752-5805
Counsel for Petitioner

</div>

## CERTIFICATE OF SERVICE

This certifies that on April 22, 2016, I electronically filed the foregoing document with the clerk of court using the electronic case filing system of the court. The electronic case filing system sent a notice of electronic filing to the following attorney of record, who has consented in writing to accept this notice as service of this document by electronic means: Matthew Ottoway, Assistant Attorney General, Counsel for Respondent.

 

                                                        Lydia M.V. Brandt, Esq.
                                                     lydiabrandt566@gmail.com
                                                     THE BRANDT LAW FIRM, P.C.
                                                      Texas Bar No. 00795262
                                                             P.O. Box 326
                                                 Farmersville, TX 75442-0326
                                                         (972) 972-752-5805
                                                        Counsel for Petitioner

cc:    Mr. John Steven Gardner, #999-516
        Polunsky Unit, TDCJ
        3872 FM 350 South
        Livingston, TX 77351-8580